IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 5:26-cv-716

| | | |
|---|---|---|
| ELIZABETH G. MACKINTOSH,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Elizabeth G. Mackintosh ("Plaintiff") brings this Complaint against Bank of America, N.A. ("BANA" or "Defendant") for actual and statutory damages, costs, and attorney's fees, for violations of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1601, *et seq*. and Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq.—all arising out of BANA's failures (1) to investigate unauthorized transactions from Plaintiff's checking and credit card accounts; (2) return the unauthorized funds; and (3) provide sufficient explanation of its investigative findings, all in violation of the FCBA and EFTA.

## **THE PARTIES**

1. Plaintiff Elizabeth G. Mackintosh is a natural person who resides in the town of Garner, North Carolina in Wake County.

2. Plaintiff is a "consumer" as that term is defined by both 12 C.F.R. § 1026.2(a)(11) and 15 U.S.C. § 1693a(6).

3. At all times relevant, Plaintiff's account was used for personal, family, or household purposes and constitutes an "account" as defined by 15 U.S.C. § 1693a(2).

4. BANA is a foreign corporation headquartered in North Carolina that provides banking and financial services throughout North Carolina including Wake County.

5. BANA is a "creditor" as defined in 15 U.S.C § 1602(g) that regularly provides "credit" and "credit card" services to businesses and individuals, including Plaintiff.

6. BANA is a "financial institution" as defined in 15 U.S.C § 1693a(9). BANA is a national bank regularly engaged in the business of "electronic fund transfers" between consumer accounts as defined in 15 U.S.C. § 1693a(7).

## JURISDICTION

7. The Court has federal question jurisdiction conferred by 28 U.S.C. 1331 due to federal causes of action under 15 U.S.C. § 1666 and 15 U.S.C. § 1693m(g), which allows claims under the EFTA to be brought in any appropriate court of competent jurisdiction.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District, and BANA regularly conducts business here.

## FACTS

9. Plaintiff is eighty-two (82) years old and retired. She is on a fixed income of Social Security benefits and retirement. She own her home and lives with her daughter.

10. Plaintiff has been customer of BANA for over thirty (30) years. She has several accounts with BANA including a Savings Account, an Advantage Checking Account ("Checking Account"), and Visa Signature Card ending ("Credit Card"). The Credit Card is subject to an annual percentage rate (APR) of 16.49% for purchases and balance transfers and 28.24% for cash advances, calculated daily.

11. At all times relevant hereto, BANA, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a credit card agreement, on BANA agreed to extend credit to Plaintiff and assessed finance charges.

12. In March 2026, Plaintiff was the victim of identity theft and fraud. On March 2, Plaintiff received a purported text from BANA stating it had received a "Direct Deposit Cash Advance" of $27,232.00 from Navy Federal Credit Union. However, Plaintiff did not authorize or have knowledge of this alleged deposit and responded "no" to the text message. This prompted a phone call from an alleged representative of BANA, "Susan," who informed Plaintiff that the local BANA in Garner, NC was under investigation for money laundering and asked Plaintiff to help in its investigation. Susan demanded that Plaintiff withdraw $6,000 but Plaintiff did not feel comfortable and refused. Plaintiff was contacted by "Susan" again, by phone, and transferred to an alleged FBI Agent "Adrian Shapiero" who threatened her with arrest if she did not assist in the investigation. Plaintiff, under duress, and with Adrian Shapiero still on the phone with her, withdrew the money from BANA as instructed.

13. For a few weeks, Plaintiff was taking instructions from the alleged BANA representative and FBI agent and withdrawing money from her accounts and sending them to various addresses.

14. On April 3, 2026, the BANA Fraud Department called Plaintiff to confirm a recent cash advance to Citibank. Plaintiff does not have a Citibank account and denied the transaction. Plaintiff finally realized that she had been victim of an elaborate scam. In addition to the scam, Plaintiff discovered that her social security number was obtained fraudulently and suffered several unauthorized transactions from her Checking Account and Credit Card. Plaintiff submitted a fraud dispute to BANA.

15. On or about April 7, 2026, Plaintiff visited the local Garner BANA branch and in addition to the scam, Plaintiff discovered that her social security number was obtained fraudulently and suffered several unauthorized transactions from her Checking Account and Credit Card. Plaintiff submitted a fraud dispute to BANA.

16. On April 7, 2026, Plaintiff submitted a police report with the Garner Police Department stating that she had been a victim of fraud in the amount of $57,416.00.

17. Ultimately, Plaintiff lost $57,416.00 to the fraudsters.

18. Plaintiff admits to being scammed and deceived into withdrawing $29,916.00 from her accounts and sent to the fraudsters. However, several transactions, on both her Credit Card (Acct number) and Checking Account (Acct number) were neither authorized nor initiated by Plaintiff. Specifically, the (1) $7,000 cash advance from her Credit Card on March 12, 2026, (2) a $500 ATM withdrawal at the local Garner BANA from her Checking Account; and (3) the $20,000 credit card transfer from her Credit Card to an unknown Citibank account on March 13, 2026 (collectively "the Unauthorized Transactions").

19. On April 13, 2026, BANA mailed a letter to Plaintiff that stated it had temporarily credited her account for $27,500.00 while it researched her claim.

20. On May 8, 2026, BANA sent several letters to Plaintiff, based on her disputes, that all stated BANA had completed its investigation and denied her claims because it determined she received a benefit from these transactions and that her identification was used to make the withdrawal.

21. On May 13, 2026, Plaintiff contacted BANA Fraud Department to request an re-investigation of her fraud claim. At the Fraud Department's request, Plaintiff provided BANA the

Police Report. Plaintiff also requested all information and documents relied upon by BANA to make its determination that these transactions were authorized.

22. On July 21, 2026, BANA mailed a letter to Plaintiff stating it had completed its re-evaluation of her claim and determined that the unauthorized transactions were either made by Plaintiff or that Plaintiff provided permission to use the card or account. BANA did not provide any of the documents or information relied upon in making its determination that Plaintiff requested.

23. As of the filing of this complaint, Plaintiff has still not received those documents relied upon by BANA in its alleged investigation(s) of her disputes.

24. Plaintiff did not authorize or benefit from the Unauthorized Transactions of $27,500.00.

25. At the time of the Unauthorized Transactions and when Plaintiff immediately disputed, BANA had demonstrative information and documentation proving that the transactions were fraudulent and unauthorized by Plaintiff. Specifically, BANA had information on the IP address(es) for the transactions, actual and constructive knowledge of history of use of Plaintiff's account and relationship with Citibank, and surveillance video footage of the ATM withdrawal showing it was not Plaintiff.

26. BANA was and is aware that fraudulent transactions are frequent and that the frequency of these occurrences are rising.

27. BANA was and is aware that its policies and procedures were and are inadequate to prevent fraudulent transactions and unauthorized use of credit cards.

28. Plaintiff timely disputed the unauthorized transaction within sixty (60) days of the billing error.

29. Throughout several letters from BANA to Plaintiff, Plaintiff was advised that her disputes were denied because she received a benefit of the funds and that her identification was used make the withdrawal.

30. These letters to Plaintiff provided no competent evidence for the reason behind the confirmation of authorization and BANA failed to proffer any competent evidence showing that Plaintiff authorized this transaction. Indeed, because that evidence does not exist.

31. BANA issued a temporary credit to Plaintiff for the Unauthorized Transactions, then reversed the credit upon completion of an unreasonable investigation advising that Plaintiff had authorized the transactions despite overwhelming evidence to the contrary.

32. Had BANA performed a proper, reasonable investigation of the disputed transactions initially, BANA would have found that Plaintiff did not authorize the Unauthorized Transactions.

33. Plaintiff is retired and on a fixed income. The loss of funds associated with the Unauthorized Transactions came from Plaintiff's life savings. Plaintiff has suffered actual and concrete harm as a result of BANA acts and omissions because she has lost the use of the $27,500 of Unauthorized Transactions and associated fees. She has been forced to withdraw money from her life insurance to cover living expenses. In addition, Plaintiff has to continue to pay her closed Credit Card that is accruing interest for the Unauthorized Transactions and has suffered from a decrease in her credit because of a higher debt-to-credit ratio (credit utilization ratio). Plaintiff has had to reduce her socializing with friends due to her money shortage. Physically, Plaintiff has become quite anxious, has trouble sleeping, is being treated for neck and muscle tension, and has lost weight because of this. Plaintiff has suffered from frustration, aggravation, inconvenience, and emotional distress.

34. BANA's actions were part of a pattern or practice of failing to comply with its obligations under the FCBA and EFTA.

## CLAIMS FOR RELIEF

### COUNT I
### Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666 *et seq.*

35. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

36. The above-described use of Plaintiff's Credit Card was "unauthorized" pursuant to 15 U.S.C. § 1602(o).

37. This unauthorized use of Plaintiff's Credit Card constitutes a "billing error" as that term is used in the Fair Credit Billing Act, 15 U.S.C. § 1666(b).

38. Plaintiff promptly notified BANA of the unauthorized use of the Credit Card and BANA was in receipt of the notification and disputes.

39. Plaintiff's written disputes, described above, was sufficient for BANA to identify the name and account number of Plaintiff ("Notice").

40. Plaintiff did not benefit, either directly or indirectly, from the unauthorized use of the Credit Card.

41. The Notice indicated that Plaintiff did not authorize this fraudulent transfer and gave detailed explanation as to what actually occurred.

42. BANA was required to conduct a reasonable investigation into the unauthorized transaction on Plaintiff's Credit Card. However, BANA failed to conduct a reasonable investigation into the reported fraudulent activity, because based on the evidence, BANA was well aware that the unauthorized use was fraudulent.

43. BANA had no basis to determine Plaintiff authorized these transactions.

44. Upon information and belief, BANA did not contact the recipient "Citibank" of the $20,000.00 direct deposit; did not send any investigators or personnel to meet with Plaintiff to explore the circumstances around the transactions; did not ask for a personal interview with Plaintiff; did not request documentation from Plaintiff to assist in the verification of the claim; did not request a written, signed statement from Plaintiff; did not review its own video footage of the unauthorized $500 ATM withdrawal on March 12, prior to the fraudulent $20,000 transfer; and did not do any other type of research or reasonable investigation whatsoever before making its unilateral decision to deny Plaintiff's claims of unauthorized use of the Credit Card.

45. Indeed, a reasonable investigation would have included a review of one or more of the following items, which would have led BANA to conclude that fraud had occurred and would have revealed, *inter alia*, the following:

a. Plaintiff did not authorize the disputed transactions;

b. Plaintiff promptly reported the fraudulent transactions;

c. Plaintiff has no history of making false or unverifiable fraud reports;

d. Plaintiff has no criminal history;

e. Plaintiff has no history of fraud with BANA; and

f. No other proof exists to refute Plaintiff's claim.

46. BANA failed on multiple occasions to correct the alleged error as it was required to do under the FCBA and it was obligated to credit Plaintiff for the unauthorized transactions. However, BANA chose to disregard its obligations to its cardholder.

47. Plaintiff made good faith attempts to resolve this issue with BANA, but BANA routinely failed to uphold its duties to Plaintiff.

48. Presently, BANA continues to attempt to collect payment and accrue interest from these unauthorized transactions.

49. As the direct result of BANA's violations of the FCBA, Plaintiff has suffered, and continues to suffer, actual damages, mental anguish, humiliation, and emotional distress.

50. As a direct result of each of BANA's violations of the FCBA, Plaintiff is entitled to actual damages, statutory damages, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1640(a).

**COUNT II**
**Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.***

51. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

52. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, BANA bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

53. The primary objective of the EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

54. BANA is a financial institution. 12 C.F.R. § 1005.2(i).

55. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." Id. § 1693f(f).

56. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1).

57. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

58. Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.").

59. Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12). See, e.g., Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

60. Thus, BANA's failure to reimburse Plaintiff is patently unlawful and in violation of Section § 1693g.

61. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. *See* 15 U.S.C. § 1593g(b).

62. BANA cannot meet its burden of proof here, where Plaintiff:

a. Promptly disputed the transaction;

b. Provided details regarding her use and not making the ATM withdrawal at the Garner BANA location;

c. Has no criminal history; and

d. Has no history of filing false disputes.

63. BANA has violated 15 U.S.C. § 1693f of the EFTA, which governs resolutions of errors such as the one set forth herein.

64. Specifically, BANA failed to investigate in good faith and failed to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

65. BANA also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d). See CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

66. As a direct and proximate result of BANA's acts and omissions, Plaintiff has suffered actual damages, including but not limited to being without the use of the $500.00, financial loss, financial strain and burden, past and future monetary loss, past and future mental distress, emotional anguish, stress, frustration, and other damages that will be presented at trial.

67. As a direct and proximate result of BANA's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs, and reasonable attorney's fees. *See* 1693f, 1693g, and 1693m.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendant:

a) Actual and compensatory damages;

b) Statutory and treble damages and civil penalties;

c) Costs and reasonable attorneys' fees;

d) Interest at the highest rate allowed by law;

e) A trial by jury on all issues so triable; and

f) Such other relief as may be necessary, just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues triable by jury.

Dated: September 29, 2026.

*/s/ Ian E. Vance*
Ian E. Vance
N.C. State Bar No. 60056
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel: 919-526-0450
Fax: 919-882-8763
ivance@carolinalaw.com

*ATTORNEY FOR PLAINTIFF*